IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs, May 8, 2012 Session

ISIAH BUCKLEY v. STATE OF TENNESSEE

Appeal from the Criminal Court for Davidson County
No. 2004-C-2273      Mark J. Fishburn, Judge

No. M2011-01868-CCA-R3-PC - Filed August 10, 2012

The petitioner, Isiah Buckley, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief. Pursuant to a negotiated plea agreement, the petitioner pled guilty, as a Range I offender, to facilitation of second-degree murder, a Class B felony, and received an out-of-range sentence of fifteen years, with the manner of service to be determined. After a hearing, the petitioner was ordered to serve the sentence. In the instant appeal, the petitioner contends that his plea was not entered knowingly and voluntarily because he was deprived of the effective assistance of counsel. Specifically, he contends trial counsel was ineffective by: (1) failing to inform the trial court of withheld exculpatory evidence; and (2) failing to investigate and to interview witnesses. Following review of the record, we affirm the denial of post-conviction relief.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., J., and JEFFREY S. BIVINS, J., joined. .

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Isiah Buckley

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Tory Johnson, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee

OPINION

Procedural History

The relevant facts underlying the petitioner's conviction, as recited by the State and stipulated to by the defendant at the guilty plea hearing, are as follows:

In this case, if the State had gone to trial today, the proof would've . . . shown that on June 27 of 2006, the [petitioner] . . . and his friend, Dante Nelson, were both talking and complaining about the fact that neither one of them had very much money and were trying to come up with ways in which to solve that particular problem. It was this [petitioner] . . . who was familiar with the victim in this case, Jeremiah Evans, from having bought from him in the past, some marijuana. He mentioned Jeremiah Evans' name to Dante Nelson as someone who would likely have both drugs and cash.

They left the place that they were having this discussion at and drove down to Steven Lewis's house who is the cousin, I believe, of Mr. Nelson. There was a discussion with Mr. Nelson about the plan to get money from Jeremiah Evans. According to [the petitioner's] statement, Mr. Lewis went into the house for a few minutes; he did not go into the house with Mr. Lewis. Once Mr. Lewis came back and was in the car, he saw the gun that Mr. Lewis had with him. They then went to Jeremiah Evans's house on the pretense of buying some drugs and money, and Mr. Evans let them in the house because

he knew the [petitioner] . . . . Once inside, they had some conversations, everything seemed okay for a moment and then it's not entirely clear what happened, although it may be that Mr. Lewis felt that Jeremiah Evans might have been reaching for something at that point, Mr. Lewis said something to the effect of, "Come on with it," and shot him.

[The petitioner] and Mr. Lewis ran out of the apartment, which was on Bell Road in Davidson County. [The petitioner] leaped over some stairs causing him to break a leg. They all eventually got into the car. Some way or another [the petitioner] ended up with the murder weapon and he has told police that he threw it in the river. It has never been found.

The petitioner, along with Lewis and Nelson, was indicted for two counts of first degree murder for his involvement in the death of Mr. Evans. Thereafter, the petitioner pled guilty, as a Range I offender, to facilitation of second degree murder in exchange for an out-of-range sentence of fifteen years. The agreement provided that the manner of service of the sentence was to be determined by the trial court. After a sentencing hearing, the trial court ordered that the sentence be served in the Department of Correction. No direct appeal of the sentence was filed.

On June 26, 2007, the petitioner filed a *pro se* petition for post-conviction relief alleging that his plea was not entered knowing and voluntarily based upon the ineffective assistance of counsel. Post-conviction counsel was appointed, and a motion for extension of time to file an amended petition was filed. However, no amended petition appears in the record before this court. An evidentiary hearing was held in December, 2008, at which only the petitioner and trial counsel testified.

The petitioner testified that he retained trial counsel to represent him following the preliminary hearing. He further stated that she represented him for about a year and a half prior to his accepting the plea. According to the petitioner, however, he met with trial counsel during this period only on three or four occasions, despite the fact that he was released on bond during part of this period. The petitioner indicated that trial counsel had failed to relay any information to him regarding her investigation, and he further stated that he did not believe that she had talked to any witnesses. He did testify that he had never presented trial counsel with the idea of a possible alibi for a defense.

The petitioner acknowledged that trial counsel did discuss the elements of the crime for which he was charged and told him that his co-defendants' statements would be used against him. He further testified that trial counsel had informed him that if he went to trial, he could very well lose because the co-defendants would testify against him. He stated that

-4-

trial counsel explained that his co-defendants' testimony would be used against him to establish the element of premeditation, but he claims trial counsel never discussed the element of intent. The petitioner also testified that he was not aware until after he reached the penitentiary that no witness, other than his co-defendants, could positively identify him or that there was tape recordings and video of the statements made by his co-defendants. However, he contradicted himself by admitting that he was aware of the statements given and that they were taped because all three men had been at the police station together. The petitioner, nonetheless, maintained that he had never seen or heard the video of the statements and faulted trial counsel for that omission, as well as for failing to share the 911 tape.

The petitioner next testified and acknowledged that when he accepted the plea agreement, his case had been set for trial and he "felt pressure" from that. He stated that trial counsel told him that if he accepted the fifteen-year sentence, he would be out of prison in one year, because he would get parole. The petitioner stated that trial counsel did not inform him that this parole release was not guaranteed and that he counted on that in making his decision to plead. In fact, he was denied release by the parole board, who indicated they would reconsider his release in two years.

The petitioner also complained that trial counsel failed to explain to him that he was

accepting a sentence length outside of his range. He indicated that he first heard that when he was before the court at the plea hearing. While he acknowledged that the court had addressed the out-of-range sentence, he maintained that he did not comprehend the ramifications of his decision. Nonetheless, he did acknowledge that the trial court had gone to great lengths to cover the plea agreement with him. However, he indicated that he relied upon trial counsel, who had advised him to take the plea offer because if he went to trial, he would lose. He faulted trial counsel for failing to explain the term "out of range," for failing to explain in which class of felony charges facilitation of second degree murder fell, and for failing to explain that if convicted at trial of the facilitation charge, he could not receive a fifteen-year sentence.

On cross-examination, the petitioner confirmed that trial counsel had explained the charged crime of felony murder and indicated he was aware that he was facing a possible life sentence. In fact, he admitted that at the time the offer was made, he believed it was a good deal. However, at the post-conviction hearing, he asserted that trial counsel should have talked to the co-defendants in person because their stories were inconsistent. Nonetheless, he acknowledged that all the statements were taped and that trial counsel had possession of those tapes during her trial preparation. He went on to state that trial counsel knew about all the evidence both from discovery and because she had sat in on a co-defendant's trial.

Upon examination by the court, the petitioner testified that he wished he had not pled guilty. He insisted that he thought he would accept the agreement and be out in one year under split confinement; however, he acknowledged that there was no specific agreement with regard to split confinement. He also admitted that prior to the acceptance of the plea, trial counsel had covered the various possibilities that the trial court could impose with regard to the sentence after acceptance of the plea. The petitioner again stated that, at the time of acceptance, he believed the plea was a good deal. However, he decided it was a bad deal after he looked over his case, and he now felt like he could have gotten a better deal.

Trial counsel also testified and stated that she was retained by petitioner and that she met with him as often as she could. Trial counsel indicated that the petitioner had transportation problems and could not get to her office often. However, she felt that they spoke often enough for her to adequately advise the petitioner of the evidence and relevant law. Trial counsel indicated that she received discovery in the case and shared the materials with the petitioner. She indicated that she spoke in detail with the petitioner about the discovery materials. She also provided the defendant with transcripts from his co-defendant's trial, which had occurred prior to the acceptance of this plea agreement. The petitioner had testified at that trial, admitting his involvement in the planned robbery but denying that he was the shooter. The testimony given by the petitioner at trial was corroborative of the statement he gave to police during the investigation. Trial counsel

indicated that she believed that the petitioner's own testimony supported a finding of guilty of felony murder. It was his testimony against his co-defendant that caused the State to offer the petitioner the plea agreement.

Trial counsel testified that the petitioner had given her no additional names to interview as possible defense witnesses. She indicated that she was well-aware of the proof which would be presented, having witnessed and reviewed the co-defendant's prior trial. She saw no need to personally interview the State's witnesses, because she was already aware of what their testimony would be based upon the prior trial. Moreover, both co-defendants were represented by counsel and would not likely have been allowed to converse with her. She agreed that no witness, other than the co-defendants, put the petitioner at the scene of the crime; however, the petitioner's own testimony at trial, as well as his police statement, put him at the crime scene. Trial counsel indicated that she did not believe that, based upon the proof, the petitioner could get a lesser-charge conviction had he gone to trial.

After she received the offer, trial counsel went over the offer with the petitioner and advised him that it was a good deal. She specifically covered the fact that the sentence was out of range. She gave the petitioner copies of the plea documents to take with him to ensure that he read and understood the agreement. Trial counsel informed the petitioner that he was eligible for parole, but she did not guarantee that he would receive it, because that was a

decision made by the Board of Parole. She further explained to the petitioner that any trouble he got into while on bond or once sentenced would be a factor in the Board's decision.

Trial counsel also testified that, during the trial preparation period, the petitioner was released on bond. She indicated that he was continually getting into additional trouble with the law and had to appear multiple times before the court on bond issues. The petitioner's bond was eventually revoked, and he was returned to jail.

After hearing the evidence presented, the post-conviction court took the matter under advisement and later issued a written order denying relief. This appeal followed.

**Analysis**

On appeal, the petitioner contests the post-conviction court's denial of his petition for relief. He contends that the evidence presented established that he was denied his right to effective assistance of counsel. Specifically, he contends that: (1) trial counsel failed to bring to the trial court's attention that the State failed to provide the petitioner with exculpatory evidence; and (2) failed to investigate and interview witnesses. While raised at the post-conviction hearing, on appeal, he does not specifically contest that his plea was entered unknowingly and involuntarily. However, as has been noted, once a guilty plea has been

entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness

of the plea. Thus, any such claims of ineffective assistance necessarily implicate that guilty

pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing

*North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

In evaluating the knowing and voluntary nature of a guilty plea, the United States

Supreme Court has held that, "[t]he standard was and remains whether the plea represents

a voluntary and intelligent choice among the alternative courses of action open to the

defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination,

the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919

S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534,

542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were 'voluntary' and 'intelligent'
> must look to various circumstantial factors, such as the relative intelligence of the
> defendant; the degree of his familiarity with criminal proceedings; whether he was
> represented by competent counsel and had the opportunity to confer with counsel
> about the options available to him; the extent of advice from counsel and the court
> concerning the charges against him; and the reasons for his decision to plead guilty,
> including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must

demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*,

40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Id*. at 458. Questions concerning the credibility of witnesses and the weight to be given their testimony are for resolution by the post-conviction court. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

In a memorandum opinion, the post-conviction court denied relief, finding, in relevant part, as follows:

> First, Petitioner claims that [trial counsel's] representation was ineffective, because she failed to interview witnesses. [Trial counsel] stated that although she did not interview any witnesses, that she did observe various aspects of the trial of his co-defendant Lewis, and knew what would be required of each witness were the matter to proceed to trial. Moreover, [trial counsel] stated that she provided transcripts of his co-defendants' trial to Petitioner. The Court finds that [trial counsel] fulfilled her obligation to adequately advise [the petitioner] of the evidence against him, trial strategies available so that he could make an informed decision whether to plea or go to trial.
>
> Additionally, the petitioner alleges that [trial counsel] did not

adequately explain the consequences of his plea and the anticipated sentencing hearing. . . . [Trial counsel] asserts that . . . she discussed all the forms in which his sentence could be imposed by the court, including the time at which he would be eligible for parole. At no time did she guarantee that the Petitioner would receive alternative sentencing; rather, she sought to explain all options available to Petitioner. The Court accredits the testimony of [trial counsel] in all respects. As such, the Court finds no basis for Petitioner's claim of ineffective assistance of counsel.

Petitioner also claims that he did not enter a guilty plea knowingly and voluntarily, thus denying him a jury trial.

. . . .

In the present case, Petitioner claims that he had no knowledge of the class of felony to which he was pleading, and moreover, that he was pleading outside of the sentencing range proscribed by the State of Tennessee. Although he conceded that the Court informed him that his plea was out of range, the day it was tendered by the Court, he alleges that it was the first time that he had heard of it, and that he did not fully understand the implication of

the plea. [Trial counsel] asserts that she did in fact explain the plea agreement, specifically that he was pleading out-of-range.

Petitioner was informed of these implications during the plea in open court, and he affirmed to the Court that he fully understood these rights, and that he was fully aware that he was waiving such rights. The court finds no merit on Petitioner's issue that he did not enter his guilty plea knowingly and voluntarily.

The petitioner urges us to find that the evidence in the record preponderates against the post-conviction court's findings. Again, he asserts ineffective assistance of counsel was established because: (1) trial counsel failed to bring to the court's attention exculpatory evidence withheld by the State; and (2) trial counsel failed to investigate the case and interview witnesses.

Initially, we are constrained to note that we are perplexed by the alleged ineffective assistance of counsel with regard to exculpatory evidence. No where in the petition filed or in the transcript of the hearing in the post-conviction court is this contention mentioned. Indeed, in the appellate brief, the petitioner merely makes the bare assertion and then cites to applicable law. He fails to even mention what the alleged exculpatory evidence is.

Because the petitioner has failed to raise the issue in the post-conviction court and failed to support his assertion in the brief with adequate facts, we decline to address this contention. *See* T.C.A. §§ 40-30-106(g), 40-30-110(f) (2010); Tenn. R. App. P. 27; Tenn. R. Ct. Crim. App. 10(b).

Turning to the trial counsel's alleged deficiency in failing to investigate and interview witnesses, we must conclude that nothing in the record preponderates against the findings made by the post-conviction court. The petitioner, however, contends that trial counsel failed to "put forth any effort" to interview witnesses, instead relying solely on the investigative work of the State . He contends that "information relevant to the defense might have been obtained through better pre-trial investigation of the witnesses, and a reasonable lawyer would have made some effort to investigate the eyewitness' testimony." He asserts that trial counsel's "failure to investigate was not part of a calculated trial strategy, but is likely the result of incompetence." We disagree.

Trial counsel testified that she met with the petitioner, provided him with relevant discovery, and discussed the facts of the case, the State's evidence, and available trial strategies. She testified that she believed that the petitioner was adequately prepared to make an informed decision on whether to accept the plea or proceed to trial. The post-conviction court specifically accredited this testimony, and we will not reweigh or re-evaluate such a

-15-

determination on appeal. *See Black*, 794 S.W.2d at 757.

Trial counsel's testimony established that, contrary to the petitioner's assertions, she did not simply rely upon the State's discovery file. In this case, a co-defendant was tried first, and trial counsel availed herself of the opportunity to sit in on portions of that trial and hear the testimony which was given. Thus, she was already aware of what each witness was going to testify to. Trial counsel further obtained complete trial transcripts, which she shared with the petitioner. At the post-conviction hearing, she testified that she would not have been able to interview the co-defendants because they were represented by counsel and would likely not have been allowed to speak with her.

Regardless, the petitioner failed to put forth any witness or evidence at the post-conviction hearing which would have been beneficial to his case. He claims trial counsel could have discovered a better defense strategy had she interviewed the witnesses, but wholly fails to substantiate that with witness testimony. "When a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black*, 794 S.W.2d at 757. The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced." *Id*. Because the petitioner failed to put forth this evidence, he failed to establish ineffective assistance of counsel.

-16-

We further conclude that nothing in this record preponderates against the post-convictions court's finding that the plea was entered knowingly and voluntarily. Trial counsel testified that she covered the ramifications of the plea agreement with the petitioner prior to his acceptance. She specifically denied that she ever informed him that he was guaranteed an alternative sentence or that he was guaranteed release on parole. She also indicated that she informed the petitioner that the fifteen-year sentence was outside of his range. Again, the post-conviction court accredited this testimony, and we do not disturb that finding.

Moreover, review of the plea hearing transcript reveals that the court, prior to acceptance of the plea, explained the agreement to the petitioner in great detail. The court specifically covered that the sentence was outside the applicable range. The petitioner indicated on the record that he understood the agreement and had no questions. The petitioner testified that he fully understood the consequences of the plea agreement. "A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service." *Alfonso Camacho v. State*, No. M2008-00410- CCA-R3-PC (Tenn. Crim. App., at Nashville, Aug. 18, 2009). A petitioner's sworn statements and admissions of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements. *Id*.

On this record, the petitioner has failed to show an entitlement to relief. It appears that he was appropriately advised of the consequences of the plea agreement and all other possible alternatives. The petitioner, facing a possible life sentence, was offered the opportunity to testify against his co-defendants and receive a guaranteed sentence of fifteen years. The petitioner chose to accept that offer. The petitioner testified that he "felt pressure" because of the impending trial and felt that it was "a good deal" at the time to accept the plea. That he now believes he "had a better chance [of getting a lesser sentence] if [he] went to trial" does not entitle him to a second chance to make the decision. He has failed to meet his burden of establishing that he is entitled to relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE